**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BO AVERY; PHOEBE ROGERS; KRISTY CAMILLERI; JILL UNVERFERTH,

*Plaintiffs - Appellees*,

v.

TEKSYSTEMS, INC.,

*Defendant - Appellant*.

No. 24-5810

D.C. No. 3:22-cv-02733-JSC

OPINION

Appeal from the United States District Court
for the Northern District of California
Jacqueline Scott Corley, District Judge, Presiding

Argued and Submitted August 13, 2025
San Francisco, California

Filed January 28, 2026

Before: Johnnie B. Rawlinson and Lucy H. Koh, Circuit
Judges, and Sidney A. Fitzwater, District Judge.[*]

Opinion by Judge Koh

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

# SUMMARY[**]

## Arbitration / Class Action

The panel affirmed the district court's denial of a motion to compel arbitration filed by Defendant TEKsystems, Inc. ("TEK") in a putative class action brought by Plaintiffs Bo Avery, Jill Unverferth, Kristy Camilleri, and Phoebe Rogers (collectively, "Plaintiffs").

Over 22 months after the commencement of the litigation, and after briefing on class certification had closed, TEK rolled out a new, mandatory arbitration agreement (the "Arbitration Agreement") that automatically applied to putative class members unless they quit their jobs or opted out of the Arbitration Agreement. The district court granted Plaintiffs' motion for class certification, and the class notice period began. Federal Rule of Civil Procedure ("FRCP") 23 creates an opt-out requirement for class members because it mandates that members of a certified class must be provided with the "best notice that is practicable" and an opportunity to request exclusion during the class notice period. If class members do nothing, they are automatically members of the class. On the other hand, under TEK's Arbitration Agreement, class members who do nothing automatically opted out of the class. In order to remain in the class, class members had to quit their jobs or affirmatively opt out of the Arbitration Agreement. Thus, the district court found that TEK subverted FRCP 23 by turning FRCP 23's opt-out class procedures into opt in class procedures. The district court

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

also concluded that TEK's Arbitration Agreement roll out communications threatened the fairness of the litigation. These communications stated that class actions are "wasteful," "inefficient," involve "exorbitant fees," "tend to enrich only attorneys," and would "require" TEK "to ignore individual employee issues and concerns"; were sent and required action during the holidays; contained inconsistent statements about how and when to opt out of the Arbitration Agreement; and also implied that putative class members must consult their own attorneys at their own expense rather than class counsel. Thus, the district court denied TEK's motion to compel arbitration.

Following U.S. Supreme Court precedent giving district courts the duty and broad authority to exercise control over a class action under FRCP 23(d), the panel held that a district court has the authority to decline to enforce a motion to compel arbitration under FRCP 23(d) to ensure the fairness of the class proceedings. The panel noted that its holding is in accord with the Fourth Circuit, Sixth Circuit, and Eleventh Circuit. The panel also held that TEK's Arbitration Agreement roll out communications were misleading and threatened the fairness of the class action proceedings. Additionally, the panel held that the Arbitration Agreement's delegation provision did not prevent the district court from determining the enforceability of the Arbitration Agreement. Thus, the panel affirmed the district court's decision to decline to enforce TEK's motion to compel arbitration.

## COUNSEL

Shelby H. Leighton (argued) and Leah M. Nicholls, Public Justice PC, Washington, D.C.; Sally J. Abrahamson, Werman Salas PC, Washington, D.C.; Maureen A. Salas, Anne Kramer, and Douglas M. Werman, Werman Salas PC, Chicago, Illinois; Krysten L. Connon and Sarah R. Schalman-Bergen, Lichten & Liss-Riordan PC, Boston, Massachusetts; Rachel Bien, Olivier & Schreiber LLP, Pasadena, California; for Plaintiffs-Appellees.

Lennon B. Haas (argued) and Alexander W. Simon, Seyfarth Shaw LLP, Atlanta, Georgia; Brian P. Long, Seyfarth Shaw LLP, Los Angeles, California; Andrew Scroggins, Seyfarth Shaw LLP, Chicago, Illinois; for Defendant-Appellant.

# OPINION

KOH, Circuit Judge:

On January 28, 2022, Plaintiffs Bo Avery, Jill Unverferth, Kristy Camilleri, and Phoebe Rogers ("Plaintiffs") filed a putative class action against Defendant TEKsystems, Inc. ("TEK") on behalf of former and current recruiters, alleging various state wage and hour violations. On December 19, 2023, after class certification briefing had closed, TEK rolled out a new, mandatory arbitration agreement (the "Agreement") applicable to class members. On June 10, 2024, after class certification and Plaintiffs filed a motion for partial summary judgment, and five days before the close of the class notice period, TEK moved to compel arbitration against class members bound by the Agreement. The district court concluded that TEK's communications rolling out the Agreement "threatened the fairness of the litigation because the communications were misleading and omitted key information," and denied TEK's motion under Federal Rule of Civil Procedure ("FRCP") 23(d). This appeal concerns whether the district court properly denied TEK's motion to compel arbitration under FRCP 23(d). For the reasons below, we hold that it did.

## I. BACKGROUND AND PROCEDURAL HISTORY

TEK is a professional staffing agency that places external employees, which it calls consultants, on temporary assignments with business clients to provide IT services. Prior to this lawsuit, TEK had a longstanding policy requiring its consultants to sign an arbitration agreement as a condition of employment.

Plaintiffs are former TEK employees who worked as recruiters.  Plaintiffs allege that TEK misclassified its recruiters as exempt from state overtime laws and failed to pay them overtime or provide meal and rest breaks.  On January 28, 2022, Plaintiffs, on behalf of current and former TEK recruiters in California, brought a class action complaint in state court and alleged six causes of action under California law concerning wage and hour violations.

TEK removed the case from state court to federal court on May 6, 2022.  On July 28, 2022, TEK moved to dismiss, stay, or transfer the case to the Western District of Pennsylvania.  The district court denied TEK's motion on August 31, 2022.  The parties then engaged in discovery for over a year.  In September 2023, TEK approved a plan to expand its mandatory arbitration policy to include its internal employees, including recruiters.

On October 6, 2023, Plaintiffs filed their motion for class certification.  On November 17, 2023, TEK filed its opposition, and on December 14, 2023, Plaintiffs filed their reply.  On December 19, 2023, five days after class certification briefing had closed, TEK rolled out its new, mandatory Agreement, which is central to this appeal.  For relevant class members, TEK's Agreement announcement came in two stages.

First, on December 19, 2023, TEK sent an email to all internal employees with the subject line "Mutual Arbitration Agreement" ("Email 1").  Email 1 provided:

> As you know from the email you received earlier today, at this time of year we typically review and update our company policies, required trainings and employee information.

In 2024, TEKsystems is instituting a mutual arbitration agreement for internal employees in the U.S. Mutual arbitration agreements are commonplace today. Most people have signed them as part of cell phone contracts, rental agreements, and credit card agreements. **They are increasingly common with employers as they provide a mutually agreeable way to settle disputes while being more efficient and cost effective for both employees and the company**.

We value each employee and believe that workplace concerns are best resolved through open and candid discussions, and employees are encouraged to raise and discuss any concerns as soon as they arise. In the event the issue or concern cannot be resolved satisfactorily, or if an employee chooses not to pursue these informal channels, employees will be required to pursue covered claims through mandatory arbitration as described in the attached Agreement.

Attached is the Company's Mutual Arbitration Agreement (the "Agreement"). Please review it carefully as it affects our mutual right to litigate certain types of legal claims in court, and also includes a waiver of class and collective action claims. Under the Agreement, both employees and the Company would pursue any "covered claims" through individual arbitration instead of court litigation or class/collective actions. **In our experience, litigation in court –**

**particularly class and collective actions – are wasteful, inefficient means for resolving disputes, and tend to enrich only attorneys rather than the individuals who may have legitimate claims**.

As part of this Agreement, the Company will pay for the costs of arbitration, minus a small "filing fee." For pursuing individual claims, the arbitration forum is similar to court, but less formal. The same substantive laws apply to your claim, and the arbitrator (whom you would participate in selecting) would be directed to reach a conclusion and can provide the same remedies you could receive in an individual lawsuit in court. Before initiating arbitration, employees are encouraged, but not required, to come forward with any concerns or issues they may have through your HR employee relations manager or leader.

**All new and current employees will be subject to this Agreement as a condition of working for the Company. If you choose to continue working here after December 31, 2023 you'll be deemed to have accepted the Agreement, and we are asking for your signature to reflect that**. Please review, acknowledge and electronically "sign" the agreement by clicking "I agree." If you have any questions regarding the Agreement, please feel free to contact the HR team at HR@teksystems.com.

> You can find additional information and FAQs here [link].

The Agreement, attached to Email 1, covered Plaintiffs' claims in this lawsuit and provided, in part:

> **YOU WILL BE DEEMED AS HAVING ACCEPTED THIS AGREEMENT IF YOU REMAIN EMPLOYED BY TEKSYSTEMS ON OR AFTER JANUARY 1, 2024.**
>
> …
>
> Arbitration Procedures
> - The parties will use Judicial Arbitration and Mediation Services ("JAMS") subject to its then-current employment arbitration rules and procedures (and the then-existing emergency relief procedures contained in the JAMS comprehensive arbitration rules and procedures if either party seeks emergency relief prior to the appointment of an Arbitrator), available at www.jamsadr.com, unless those rules and/or procedures conflict with any express term of this Agreement, in which case this Agreement is controlling;

Relevant to this appeal, JAMS Rule 11(b) is a delegation clause that provides "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."

Email 1 contained a link to TEK's accompanying FAQ document, which provided additional commentary on class actions, including:

> Why is the Company implementing the Agreement?
> - **The Company believes that arbitration provides a mutually agreeable way to settle disputes while being more efficient and cost effective for both employees and the Company.**
> - Arbitration is a forum for dispute resolution where the dispute is presented by each side to a neutral decision-maker, an arbitrator, who then makes a decision on the appropriate outcome.
> - **In our experience, litigation in court – particularly class and collective actions – are wasteful, inefficient means for resolving disputes, and tend to enrich only attorneys rather than the individuals who may have legitimate claims.**
>   . . .
>
> Can I still get the same result that I would have been able to get in court for my individual claims?
> - Yes. The arbitrator will have the same authority to award all the same remedies that would have been available to you in court on an

individual claim. **But you will not have the right to proceed on a class-wide claim (which generally tends to enrich attorneys, not individual class members)**.

. . .

Does this require us to waive class claims? Why is that a requirement?

- **Yes. To the extent you have one of the covered claims, the Company cares about resolving your claim specifically and thoroughly. A class claim requires the Company to ignore individual employee issues and concerns. Additionally, attorneys, not employees, are often the biggest winners in class actions, often charging exorbitant fees to both the class and the employer involved, reducing the money actually received by class members.**

After Email 1 was sent, on the same day, TEK sent a second email to all recruiters who were members of the putative class with the subject line "Mutual Arbitration Agreement and Current Class Action Suit" ("Email 2"). Email 2 provided, in part:

As we've communicated, **the company is adopting a policy of requiring mutual arbitration that will go into effect on January 1, 2024**.

A lawsuit has been filed which, if certified, would include you as a class member. **You may opt out of the arbitration agreement for the limited purpose of keeping your ability to participate in that lawsuit by signing and returning the attached agreement by January 9, 2023**. The attached document provides more detail.

You can find a copy of Avery et al. v. TEKsystems, Inc. here [link].

The document attached to Email 2 was titled "Notice of Right to Opt-Out of Mutual Arbitration Agreement for Limited Purpose" (the "Opt-Out"). The Opt-Out provided:

**Like all other employees of TEKsystems, you received from TEKsystems a Mutual Arbitration Agreement ("Agreement") that will be effective as to all TEKsystems employees beginning on January 1, 2024.**

You are receiving this additional communication because you are a putative class member in the case captioned *Avery, et al. v. TEKsystems, Inc.*, Case No. 3:22-cv-02733-JSC, that is pending before the United States District Court for the Northern District of California ("*Avery*") and the Agreement may affect your rights in that matter.

The main claim in *Avery* is that TEKsystems allegedly misclassified Recruiters as exempt from the overtime requirements under California law and that, therefore,

TEKsystems owes Recruiters back overtime pay and various penalties. TEKsystems denies the substantive allegations in the case. A motion for class certification has been filed, which TEKsystems has opposed, and the court has not issued a decision on it or on the merits of the case. You may be able to receive money if the court certifies a class and if either the court ultimately rules in favor of the class on the merits or if the parties settle the case.

If you wish to view the operative complaint in *Avery*, which contains contact information for the attorneys who seek to represent a class, you may do so by clicking the link in the DocuSign email or typing in this URL [link].

**The Agreement contains a broad definition of Covered Claims and does not exclude the claims brought in *Avery*. Accordingly, unless you separate from your employment with TEKsystems before January 1, 2024, or take action as described below before January 9, 2024, TEKsystems will take the position in *Avery* that, if a class is certified, you could not be a part of it and that you can bring claims only in individual arbitration.**

**If you wish [to] remain a part of the putative class in *Avery* in federal court, you may opt out of the Mutual Arbitration Agreement for the limited purpose of**

**remaining in the *Avery* putative class by signing below and returning this form no later than January 9, 2024.**

**You of course are free to consult your attorney.**

I wish to opt-out of the Mutual Arbitration Agreement for the limited purpose of remaining in the putative class in *Avery, et al. v. TEKsystems, Inc.*, Case No. 3:22-cv-02733-JSC (N.D. Cal.).

Of the 164 employees that received Email 2 and the Opt-Out, 41 employees opted out to remain eligible class members.[1] 123 class members did not opt out of the Agreement.

After TEK's roll out of the Agreement, that same day, TEK's counsel notified Plaintiffs' counsel of the Agreement. After receiving copies of Emails 1 and 2, on December 22, 2023, Plaintiffs filed an emergency motion for a protective order and asked the district court to invalidate the Agreement and restrict TEK's communications with class members. On January 4, 2024, the district court held a hearing on Plaintiffs' emergency motion. The district court declined to invalidate the Agreement and did not limit TEK's communications with the class, but did require TEK's future communications to be disclosed to Plaintiffs.

---

[1] TEK states that 164 class members received Email 2 and the Opt-Out and that 123 class members did not opt out of the Agreement. At the same time, TEK also states that 191 class members received Email 1. TEK does not explain this discrepancy. As TEK relies on the 164 class members number for Email 2 for its arguments, we use that number as well.

On February 1, 2024, the district court held a class certification hearing, at which TEK did not raise the issue of arbitration. The district court granted Plaintiffs' motion for class certification on February 13, 2024. Following class certification, the parties engaged in briefing regarding the content of the class notice. During the notice process, TEK informed the district court on two occasions that TEK intended to move to compel arbitration pursuant to the Agreement within a week of the close of the class notice period. At the case management conference on March 14, 2024, the district court stated it saw "no reason why the motion to compel arbitration can't be filed while notice is going out," and told TEK that TEK needed to start drafting the motion to compel arbitration immediately, even if the motion could not be decided until the notice period closed.

On April 9, 2024, the district court approved the class notice, and the class notice was issued to class members on April 16, 2024. Class members had until June 15, 2024, to opt out of the class. After the class notice was approved, the parties filed a joint case management conference statement in which TEK again stated that it intended to move to compel arbitration pursuant to the Agreement after the close of the class notice period. On April 17, 2024, the district court held a case management conference and set a briefing schedule for Plaintiffs' motion for summary judgment. On May 14, 2024, Plaintiffs filed their partial motion for summary judgment. On June 10, 2024, five days before the class notice period closed, TEK filed its motion to compel arbitration against members of the putative class bound by the Agreement.

On August 21, 2024, the district court denied TEK's motion to compel arbitration on two grounds. First, the district court found that FRCP 23(d) gives district courts

broad authority to regulate the notice and opt-out process and to impose limitations when a party's conduct threatens the fairness of the litigation. The district court noted that courts routinely exercise this discretion to invalidate or refuse to enforce arbitration agreements implemented during a pending class action that interfere with class members' rights. The district court then concluded that TEK's communications "threatened the fairness of the litigation because the communications were misleading and omitted key information."

The district court noted that TEK made disparaging comments regarding class actions multiple times, which "appear designed to prevent putative class members from opting into the lawsuit and opting out of the [Agreement]." Further, the district court found the communications misleading for many reasons: (1) a recipient may think they personally have to pay "exorbitant fees" as a member of the class; (2) TEK did not tell class members they could consult with Plaintiffs' counsel without paying out of pocket; (3) TEK did not readily provide Plaintiffs' counsel's contact information, but required them to click through multiple links, and then locate the contact information on a copy of the complaint; (4) TEK warned employees that they could not share the emails with others; (5) TEK did not explain that class certification had been briefed and was scheduled to be decided early the next year; and (6) TEK did not provide a copy of the class certification pleadings. The timing of these communications was "especially concerning" as TEK's emails "were the first communication many putative class members received about the case."

Additionally, the district court found the two emails contradictory. Email 1 purported to mandate arbitration if an employee wanted to keep their job and "did not indicate

that there was any opt-out procedure." Email 2 then indicated an opt-out was possible for purposes of a litigation "about which the putative class members had never before been notified." The district court noted "[t]he confusing nature of the emails is heightened because the emails were sent on December 19 – just before the Christmas holidays, and during a time when many employees were likely on vacation or otherwise engaged and thus unlikely to be able to obtain advice." Ultimately, the district court concluded "TEK turned this Rule 23 opt-out class proceeding into an opt-in proceeding, and to ensure as few current employee class members as possible opted in, TEK disparaged class actions and hid important information from the putative class members." As "[t]hese unilateral communications thus threatened the fairness of the class action proceedings," the district court denied TEK's motion to compel arbitration under FRCP 23(d).

In the alternative, the district court also found that "TEK waived its right to compel arbitration of the claims of certified class members." The district court concluded that TEK had employed "wait and see conduct" during the litigation that was "inconsistent with the right to arbitrate." Further, the district court found "TEK knew of its right to impose a mandatory arbitration agreement even before it removed the action" on May 6, 2022, but waited until 18 months into the litigation to impose arbitration on December 19, 2023.

TEK filed a timely interlocutory appeal on September 19, 2024.

## II. JURISDICTION AND STANDARD OF REVIEW

"[9 U.S.C. § 16(a)] authorizes an interlocutory appeal from the denial of a motion to compel arbitration." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 739 (2023).

"We review a district judge's order to compel arbitration de novo. We review factual findings for clear error, and the interpretation and meaning of contract provisions de novo." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 475 (9th Cir. 2024) (citation modified). We review district court orders under FRCP 23(d) for "an abuse of discretion." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 103 (1981).

## III. DISCUSSION

This case concerns whether the district court properly denied TEK's motion to compel arbitration based on FRCP 23(d). We hold that it did. First, we conclude that FRCP 23(d) authorizes district courts to refuse to enforce arbitration agreements. Second, we conclude that the district court correctly applied FRCP 23(d) in denying TEK's motion to compel arbitration. Finally, we conclude the Agreement's delegation provision did not prevent the district court from determining the enforceability of the Agreement.

### A. The FAA and FRCP 23(d)

Under the Federal Arbitration Act ("FAA"), "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms. Like other contracts, however, they

may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (citation modified).

FRCP 23(d) provides in part that "[i]n conducting an action under this rule, the court may issue orders that . . . (C) impose conditions on the representative parties or on intervenors . . . or (E) deal with similar procedural matters." Fed. R. Civ. P. 23(d). Additionally, FRCP 83(b) states that when there is no controlling law, "[a] judge may regulate practice in any manner consistent with federal law, [federal rules], and the district's local rules." Fed. R. Civ. P. 83(b).

The U.S. Supreme Court has interpreted these rules broadly to hold that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100. This discretion is not unlimited, and such an order "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id*. at 101. "[S]uch a weighing – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102.

Further, the U.S. Supreme Court has contemplated the remedy of cancellation of improperly obtained contracts as a logical extension of *Gulf Oil*'s broad authority to control class actions under FRCP 23(d). In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989), the Court "recognized that a trial court has a substantial interest in communications that are mailed for single actions involving multiple parties."

The Court held that *Gulf Oil*'s broad authority under FRCP 23(d) applied to collective actions. *Id*. In doing so, the Court reasoned that "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed," and that "[t]his procedure *may avoid the need to cancel consents obtained in an improper manner*." *Id*. at 172 (emphasis added).

Thus, we hold that FRCP 23(d) authorizes a district court to refuse to enforce an arbitration agreement. Our holding directly follows U.S. Supreme Court precedent interpreting FRCP 23(d). Under FRCP 23, class actions are an opt-out process in which class members are included within a certified class unless class members "request[] exclusion" from the class. Fed. R. Civ. P. 23(c). District courts have broad authority under FRCP 23(d) to control the opt-out process of class actions. As the U.S. Supreme Court has explained, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*, 452 U.S. at 100.

Specifically, "[FRCP] 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *vacated on other grounds*, 565 U.S. 801 (2011). *See also* Fed. R. Civ. P. 23(d) advisory committee's note to 1966 amendment ("Subdivision (d) is concerned with the fair and efficient conduct of the action . . . ."). TEK's actions fall within the scope of this broad authority because TEK subverted FRCP 23 by turning this typical Rule 23 opt-out class proceeding into an opt-in proceeding.

A contrary holding would be at odds with the "duty and the broad authority" of district courts to control the class action process under FRCP 23(d). *Gulf Oil*, 452 U.S. at 100. If the district court had been aware of TEK's arbitration plans before the roll out, the district court could have enjoined TEK's communications under FRCP 23(d) for being misleading and attempting to disrupt the opt-out process. *See Dominguez v. Better Mortg. Corp.*, 88 F.4th 782, 790–93 (9th Cir. 2023) (affirming a district court's communication restriction between the defendant and class members under FRCP 23(d) because the defendant's communications were misleading and coercive).

Although TEK does not dispute the district court's authority to enjoin communications under FRCP 23(d), TEK argues the district court has no authority under FRCP 23(d) to invalidate its binding Agreement. However, there would be no point to FRCP 23(d)'s broad authority to oversee class action communications if the authority stopped when a party's misleading communications with class members resulted in an agreement before the district court intervened.

Our holding today finds additional support from our recent *Dominguez* case. In *Dominguez*, we faced a similar issue where the district court issued orders under FRCP 23(d) restricting communications between the defendant and class members, and "nullifying new employment agreements and release agreements signed in response to the employer's communications that the court found to have been misleading and coercive." *Id*. at 793. We affirmed the district court's order enjoining the defendant's communications with class members because the defendant engaged in misleading and coercive communications. *See id*. at 792–93. As to the district court's order invalidating the employment and release agreements obtained through

the defendant's misleading and coercive communications, we acknowledged that the "appellate challenge raises a question that has arisen in a number of district courts in this circuit: when can a district court void a settlement or opt-out agreement obtained through misleading or coercive communications?" *Id*. at 793.

*Dominguez* "recognize[d] the potential benefit of providing guidance to district courts in this circuit on [this] question[]," but held that there was not appellate jurisdiction in that case to answer the question. *Id*. at 794. Nevertheless, *Dominguez* suggested the same conclusion we reach here. *Dominguez* noted that in *Wang*, 623 F.3d at 757, "[w]e approved a similar order [under FRCP 23(d)] nullifying class opt-outs obtained by coercion." *Dominguez*, 88 F.4th at 793. Further, *Dominguez* noted that the Fourth Circuit, Sixth Circuit, and Eleventh Circuit had confronted similar issues, and "[t]hose circuits have reasoned, consistent with the relevant portion of *Wang*, that district courts have the power to remedy misleading and coercive communications used to obtain agreements from prospective plaintiffs that affect their participation in the pending lawsuit." *Id*.

In *Degidio v. Crazy Horse Saloon & Restaurant Inc*, 880 F.3d 135, 138 (4th Cir. 2018), the plaintiffs filed a class and collective action alleging wage and hour violations under federal and state law due to the defendant misclassifying the plaintiffs as independent contractors. At the end of discovery, the defendant "began entering arbitration agreements with entertainers who had worked at the club." *Id*. The arbitration agreements contained class action waivers and were required for entertainers to perform at the club. *See id*. The district court declined to enforce the arbitration agreements because the defendant "had obtained the arbitration agreements through a unilateral,

unsupervised, and misleading pattern of communication with absent class members initiated more than a year after the pendency of this case." *Id*. at 140.  The Fourth Circuit affirmed the district court's refusal to enforce the arbitration agreements in part because the "sham agreements" were misleading and obtained in a situation "ripe for duress." *Id*. at 144.

In *Fox v. Saginaw County, Michigan*, 35 F.4th 1042, 1045 (6th Cir. 2022), the plaintiffs were property owners who had failed to pay property taxes and had their properties foreclosed upon by the county defendants.  The county defendants sold the plaintiffs' properties and kept all the sale proceeds, even if the proceeds exceeded the amount of taxes a plaintiff owed.  *See id*.  The plaintiffs then brought a class action against the county defendants seeking to recover the excess proceeds.  *See id*.  Upon learning of the lawsuit, a company solicited class members, reached agreement with some class members to be appointed their fiduciary, and opted out of the certified class for those members.  *See id*. at 1045–46.  The district court held, under FRCP 23(d), that the company's clients could rescind their agreements.  *See id*. at 1046.  The Sixth Circuit affirmed the district court's decision under FRCP 23(d) and held "[t]his remedy is not extraordinary in the class-action context.  And it falls within the district court's broad authority to manage class-action litigation to protect against coercive communications and further the administration of justice generally."  *Id*. at 1050 (citation modified).

In *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 915 (11th Cir. 2014), the plaintiffs filed a collective action alleging federal wage and hour violations due to the defendant misclassifying the plaintiffs as exempt employees.  During the litigation, the defendant rolled out a new,

mandatory arbitration agreement under the guise of a new employee handbook only to potential class members. *See id*. at 918. The district court denied the defendant's motion to compel arbitration because "the rollout was replete with deceit and designed to be intimidating and coercive," and "the purpose and effect of the arbitration agreement was to protect [the defendant] in this lawsuit" and reduce class members. *Id*. at 919 (citation modified). The Eleventh Circuit affirmed the district court's denial of a motion to compel arbitration because the defendant's actions were "confusing, misleading, coercive, and clearly designed to thwart unfairly the right of [the plaintiffs] to make an informed choice as to whether to participate in this [] collective action." *Id*. at 922.

TEK offers various arguments as to why FRCP 23(d) cannot authorize a district court to decline to enforce a valid arbitration agreement. None are persuasive. First, TEK claims that FRCP 23(d)'s plain text does not authorize courts to ignore valid arbitration agreements because FRCP 23(d)(1)(C) limits the courts' ability to "impose conditions on the representative parties or on intervenors," not defendants. Fed. R. Civ. P. 23(d)(1)(C). However, FRCP 23(d)(1)(E) provides district courts with the authority to issue orders that "deal with similar procedural matters," which would include imposing conditions on defendants. Fed. R. Civ. P. 23(d)(1)(E). Additionally, FRCP 83(b) states that when there is no controlling law, "[a] judge may regulate practice in any manner consistent with federal law, [federal rules], and the district's local rules." Fed. R. Civ. P. 83(b). Read in tandem, the U.S. Supreme Court has held that FRCP 23(d) gives a district court "the broad authority to exercise control over a class action and to enter appropriate

orders governing the conduct of counsel and *parties*." *Gulf Oil*, 452 U.S. at 100 (emphasis added).

Next, TEK argues that under the FAA, arbitration agreements are valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. TEK claims that FRCP 23(d) does not qualify because it is only a procedural rule and is not a substantive mechanism rooted in state or common law for defeating contracts. However, arbitration agreements can be invalidated based on federal procedural rules. In *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), the U.S. Supreme Court held that federal courts cannot "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" *Id*. (citation omitted). However, "[i]f an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id*. at 418 (citation omitted). Following *Morgan*, FRCP 23(d) serves as an ordinary federal procedural rule that treats arbitration contracts like other contracts and permits district courts to invalidate any contracts that disrupt the class action process. *See* 3 *Newberg and Rubenstein on Class Actions* § 9:7 (6th ed.) (comparing "the insertion of arbitration clauses in contracts of adhesion after the commencement of litigation" to "misleading settlement attempts," and noting "courts have similarly refused to compel arbitration where defendants communicated with class members so as to limit rights to participate in class actions or [] collective actions after the commencement of the action").

Finally, TEK argues that FRCP 23(d) cannot override the FAA because there is no inference of a contrary congressional command as FRCP 23(d) and the FAA do not conflict. However, there does appear to be an inherent conflict between the FAA and FRCP 23 in this case. FRCP 23 establishes an opt-out process for class actions. *See* Fed. R. Civ. P. 23(c). The district court has broad authority under FRCP 23(d) to control the opt-out process. *See Gulf Oil*, 452 U.S. at 100. TEK's actions ultimately sought to interfere with FRCP 23's fundamental opt-out procedures by changing it from an opt-out process to an opt-in process through the Agreement.

In sum, we hold that a district court's "broad authority" under FRCP 23(d) "to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties" includes the authority to decline to enforce an arbitration agreement. *Id*.

### B.  FRCP 23(d) Application

In evaluating the district court's denial of a motion to compel arbitration under FRCP 23(d), there are two applicable standards of review. FRCP 23(d) orders are reviewed for "an abuse of discretion." *Gulf Oil*, 452 U.S. at 99, 103. However, denials of motions to compel arbitration are reviewed "de novo," with "factual findings [reviewed] for clear error, and the interpretation and meaning of contract provisions [reviewed] de novo." *Patrick*, 93 F.4th at 475 (citation modified). Even if we review the district court's decision de novo rather than for abuse of discretion, we hold that TEK's communications were misleading and threatened the fairness of the class action proceedings. We thus decline to enforce the Agreement under FRCP 23(d).

A careful examination of the content of TEK's communications clearly demonstrates the misleading nature of TEK's communications and its harmful impact on potential class members.  TEK repeatedly disparaged the efficacy of class actions and misleadingly claimed that class actions are "wasteful, inefficient means for resolving disputes" that "tend to enrich only attorneys rather than the individuals who may have legitimate claims."  Further, TEK inaccurately stated that a class action "requires [TEK] to ignore individual employee issues and concerns."  TEK's disparaging and inaccurate framing of class actions was particularly significant because TEK's communications "were the first communication many putative class members received about the case."  TEK's attempt to couch this repeated language as its own opinion does not cure its obvious impact, or that these disparaging comments "appear designed to prevent putative class members from opting into the lawsuit and opting out of the [Agreement]."

Additionally, TEK's arbitration roll out was internally inconsistent and thus confusing.  Email 1 stated that if class members "choose to continue working [at TEK] after December 31, 2023 you'll be deemed to have accepted the Agreement, and we are asking for your signature to reflect that."  Thus, in Email 1, TEK requested a signature, but that signature had no real effect.  However, in Email 2, class members were presented with the opposite procedure where the request for a signature to opt-out of the Agreement was imperative.  Class members could have easily been confused because of the inconsistent actions required in Email 1 as opposed to Email 2.

The staggered nature of the deadlines for Email 1 and Email 2 also created the confusing situation where Email 1 told class members they would be bound by the Agreement

on January 1, 2024, if they did not quit their jobs by December 31, 2023.  At the same time, Email 2 told class members that they had until January 9, 2024, to opt out of the Agreement.  Further, TEK's communications were inconsistent regarding the year of the Opt-Out deadline.  In Email 2, TEK said that class members could opt out of the Agreement "by signing and returning the attached agreement by January 9, 2023."  However, in the Opt-Out, TEK stated that in order to opt out, class members must "sign[] and return[] this form no later than January 9, 2024."

Similarly, TEK's communications regarding attorneys' fees and contact information were misleading.  In the Opt-Out, TEK stated that class members "are free to consult [their] attorney."  However, Email 1 and Email 2 instructed class members not to "share this email."  Class members thus received conflicting information regarding what they could share with a lawyer.  Moreover, TEK telling class members that they are free to consult their attorney implies that class members would need to hire their own attorneys and pay out of pocket to obtain legal advice regarding the Opt-Out.

Although TEK provided class members with Plaintiffs' counsel's contact information by linking to the complaint, TEK did not clearly indicate that Plaintiffs' counsel could provide legal advice to class members regarding the Opt-Out.  Further, TEK did not disclose that class members could consult with Plaintiffs' counsel without paying out of pocket, important information that can impact whether a class member would engage Plaintiffs' counsel.  Rather, TEK stated that class counsel "often charg[e] exorbitant fees."  This would mislead a class member, receiving this information for the first time, about whether they could obtain legal advice from Plaintiffs' counsel regarding the Opt-Out without paying the fees out of pocket.

Moreover, the timing of TEK's roll out added to the confusion.  TEK rolled out its plans on December 19, 2023, and the Agreement became effective on January 1, 2024.  This 13-day period occurred during the holiday season when employees are less likely to be paying close attention to email, or able to obtain and/or consult with counsel regarding their options.

TEK's defenses of its communications are unpersuasive.  Principally, TEK argues that specific findings supported by the record cannot be made if the record contains only copies of TEK's communications and is devoid of testimony or other evidence showing actual employee confusion.  However, in *Dominguez*, we affirmed the district court's order under FRCP 23(d) restricting the defendant's communications with collective employees based only on a careful examination of the defendant's communications and not on any additional evidence.  88 F.4th at 791–92.  Next, although TEK is correct that Plaintiffs' counsel's contact information was available to class members through one click and not multiple clicks, that correction does not cure the primary issue with TEK's communications, which is that TEK omitted that class members could consult with Plaintiffs' counsel without paying out of pocket.

TEK also points to the 23% opt-out rate of class members that received Email 2 as evidence its communications were widespread, fair, and effective.  Although a 23% opt-out rate may be evidence that TEK's communications were potentially widespread, it offers no evidence that its communications were fair and not misleading.  It would be equally fair to assume that TEK's communications were misleading and confusing given 77% of class member recipients chose not to opt out of the Agreement.

Finally, TEK argues that the district court erred because it ordered the broadest relief available, invalidating the arbitration agreements, when a simple corrective notice would have sufficed.  TEK's argument is unavailing.  A corrective notice alone would not provide adequate relief to class members because they entered into the Agreement based on misleading communications.  It would not be an adequate remedy to acknowledge and correct TEK's misleading communications, but continue to bind class members to the Agreement they entered into as a result of TEK's misleading communications.  Here, TEK's actions upended FRCP 23(d) by turning the opt-out process into an opt-in process.  Although we must consider "the narrowest possible relief which would protect the respective parties," that relief must still be "consistent with the policies of [FRCP] 23."  *Gulf Oil*, 452 U.S. at 102 (citation omitted).  Invalidating the Agreement is necessary to be consistent with FRCP 23 as it restores the opt-out process as the default.

## C.  Delegation Provision

Although the Agreement incorporated a delegation provision covering arbitrability disputes, the district court properly ruled on the enforceability of the Agreement instead of delegating that issue to the arbitrator.

Here, the Agreement's delegation provision states that "[t]he parties will use [JAMS] subject to its then-current employment arbitration rules and procedures."  JAMS Rule 11(b) is a delegation clause that provides "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator."  TEK correctly notes that we have previously held that "an arbitration provision that incorporates JAMS

Rules, and particularly in light of the language of JAMS Rule 11(b)" "clearly and unmistakably delegated the question of arbitrability to JAMS." *Patrick*, 93 F.4th at 481.

However, "[i]f a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Ctr.*, 561 U.S. at 71. Here, Plaintiffs did challenge the validity of the delegation provision at issue through their challenge to the entire Agreement under FRCP 23(d). "[W]here a challenge applies equally to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) (internal quotation marks omitted). Thus, the district court did not err in deciding Plaintiffs' challenge to the Agreement and not delegating the issue to the arbitrator.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying TEK's motion to compel arbitration under FRCP 23(d).[2]

**AFFIRMED**.

---

[2] As we affirm the district court's order denying TEK's motion to compel arbitration under FRCP 23(d), we decline to reach the district court's alternative holding that TEK waived its right to arbitrate.